Levine, J.
The appellant raises two issues for our review. The first issue is whether a trial court must enforce a settlement agreement concerning the assets of an incompetent ward where the guardian retained some assets to pay guardianship expenses, contrary to the express language of the settlement agreement. The second issue is whether, upon the death of a ward, a guardian may retain part of a deceased ward’s assets to pay for present and future guardianship expenses. .As to the first issue, we conclude that Florida law favors the enforcement of settlement agreements, and the court erred in failing to enforce this agreement in accordance with its terms. As to the second issue, however, we hold that Florida law permits a guardian to retain some of a ward’s assets, even after the death of the ward, to pay for the guardian’s expenses.
Oliver Bivins, the ward, was declared incompetent and had a professional guardian appointed on his behalf. What followed was years-long litigation between the ward’s guardian and the ward’s child, Julian Bivins. The ward died in 2015, and the guardian and Julian entered into a Global Settlement Agreement.
The Global Settlement Agreement dealt with real property located in New York City. Pursuant to the Global Settlement Agreement, Julian could purchase the property for $5,000,000 under several stringent time constraints. Should Julian purchase the property, the Global Settlement Agreement specifically directed how the proceeds of the purchase should be divided. As part of the agreement, the law firm of Ciklin Lubitz & O’Connell, acting as escrow agent, would hold in trust $150,000 for monies due to the law firm of Levine & Susaneck and $125,000 for guardianship administration expenses. Furthermore, the Global Settlement Agreement stated that part of the proceeds were to pay the attorney’s fees and costs of the law firm of Beys Stein Mobar-gha & Berland, LLP pursuant to a court order entered the previous year. The Global Settlement Agreement did not, however, specifically permit Beys Stein to hold any of the proceeds in escrow. The Global Settlement Agreement directed that the remainder of the proceeds be transferred to a trust located in Texas. Julian complied with the Global Settlement Agreement and purchased the' New York property.
Upon the ward’s death, Julian became the temporary administrator of the ward’s estate. Julian requested that the guardian file a final report. The guardian’s final report indicated that, pursuant to the Global Settlement, Ciklin Lubitz & O’Con-nell held in trust $150,000 for fees due to Levine & Susaneck[1] and $125,000 -for guardianship expenses. The law firm also held $400,994.35 for • the “[g]uardianship matter.” Additionally, the guardian held $155,383.51 of the ward’s assets in a Wells Fargo checking account. The $155,383.51 was not comprised of proceeds from the sale of the New York property. Subsequently, during a hearing on attorney’s fees, Julian learned that Keith Stein, with the firm of Beys Stein Mobargha & Ber-land, LLP, who had served as a closing agent for the sale of the New York property, had also held back $72,433.94 of the sale proceeds.
Julian moved for release of all the ward’s monies being “held back” and within control of the guardian and his attorneys. Julian argued that the Global Settle- *1008 merit Agreement mandated the transfer of both the $400,994.35 and the $72,433.94 as both sums were proceeds from the New York property sale. Julian also argued the other monies in possession of the guardian and his attorney should be transferred to the deceased ward’s estate. The guardian argued that because Julian had filed various lawsuits against him and his attorneys after the ward had died, the monies were necessary to pay for the guardian’s expenses and fees.
The trial court ordered the guardian to release $400,994.35, However, the court permitted the- guardian to retain the $72,433.94 held in escrow by Stein, the $185,000 held in escrow by Ciklin Lubitz & O’Connell, and the $155,383.51 held in the guardian’s Wells Fargo account. Julian appealed.
As. to the first issue, Julian argues the trial court erred because the Global Settlement Agreement did not permit Stein to retain $72,433.94 from the New York property sale proceeds. As this issue concerns the legal question of whether, the trial court could act contrary to the Global Settlement, we review this issue de novo. See Sumner Grp, Inc. v. M.C. Distributec, Inc., 949 So.2d 1205, 1206 (Fla. 4th DCA 2007).
“In Florida, settlement agreements are ‘highly favored’ ‘and will be enforced when it is possible to do so.’” U.S. Bank Nat’l Ass’n v. Benoit, 190 So.3d 235, 237 (Fla. 4th DCA 2016) (quoting Treasure Coast, Inc. v. Ludlum Constr. Co., 760 So.2d 232, 234 (Fla. 4th DCA 2000)). “Where the contractual language is clear, courts may not indulge in construction or modification and the express terms of, the settlement agreement control.” Sec. Ins. Co. of Hartford v. Puig, 728 So.2d 292, 294 (Fla. 1999).
In the present case, the Global Settlement Agreement is ■ clear. Although the Global Settlement Agreement states proceeds from the sale of the New York property were to pay the law firm of Beys Stein Mobargha feBerland, LLP’s prior legal fees, nothing in the Global Settlement Agreement provides that Stein could hold any of the-proceeds in escrow.[2] We therefore reverse for the trial court to énforcé the Global Settlement.[3] "
As .to the second issue, Julian contends that, because the ward has died, the ward’s estate should take control of the ward’s property pursuant to section 733.607(1), Florida Statutes (2016). Accordingly, Juh ian seeks the release of the $185,000 held in escrow by Ciklin Lubitz & O’Connell as well as the $155,383.51 held in the guardian’s Wells Fargo account.
. A guardian “is entitled to a reasonable fee- for services rendered and reimbursement for costs incurred on behalf of the ward.” § 744.108(1), Fla, . Stat. (2016). When a guardian seeks discharge, “[t]hé guardian applying for discharge may retain from, the funds in his or her possession a sufficient amount to. pay the final costs of administration, including guardian and attorney’s fees regardless of the death of , the ward, accruing between the filing of his. or her final returns and the order of discharge.”- § 744.527(2), Fla. Stat. (2016).
In Romano v. Olshen, 153 So.3d 912, 920-21 (Fla. 4th DCA 2014), this court *1009 held that the death of a ward does not terminate a guardian’s access to the ward’s property. We reasoned that “[t]he guardian of property is not discharged upon the ward’s death, but must continue the administration until a petition for discharge is granted and his or her final accounting is approved.” Id. at 920. Thus, “Chapter 744 contemplates that a guardian will perform services and be able to access the guardianship estate even after the death of the ward.” Id.
Julian argues that Chapter 744 and Romano permit only the retention of monies to pay for past and current guardianship expenses, not future expenses. However, section 744.527(2), Florida Statutes, provides that the guardianship may retain funds to pay for fees “accruing between the filing of his or her final returns and the order of discharge.” Thus, the statute “contemplates that a guardian mil perform services ... after the death of the ward.” Romano, 153 So.3d at 920 (emphasis added). Consequently, a guardian may retain funds to pay for future fees and costs that accrue during the process of winding up the guardianship estate. See id.
We also find Batzle v. Baraso, 776 So.2d 1107 (Fla. 5th DCA 2001), which Julian relies upon, to be distinguishable. Batzle held that a probate court may not indefinitely extend a temporary plenary guardianship after a ward has died. In the present case, however, the guardian does not seek to extend the guardianship, but to retain part of the deceased ward’s funds so as to pay the guardian’s fees and costs. Under Chapter 744, the guardian may retain such funds.
In summary, we first hold that, pursuant to the parties’ Global Settlement, $72,433.94 must be transferred to the trust account. However, we also affirm the remainder of the lower court’s order because the guardian may retain assets of the ward to pay the costs of administration that accrue between the filing of the final returns and the order of discharge.

Affirmed in part, reversed in part, and remanded.

Warner and Taylor, JJ., concur.

. Of the $150,000 held in escrow for Levine & Susaneck, $90,000 was subsequently released, leaving $60,000 in the trust account.

. The guardián argued in the court below that the money was held back in anticipation of possible, future litigation.

. In the trial court, the guardian moved for relief from the Global Settlement Agreement under Florida Rule of Civil Procedure 1.540(b). The trial court expressly declined to consider the motion, and we do not decide the merits, if any, of such a motion.